UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Case No.   22-cr- |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| CELESTE SANTIFER, | : | |
| | : | FORFEITURE: |
| Defendant. | : | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. |
| | : | § 2461(c), 21 U.S.C. § 853(p) |
| | : | |

## INFORMATION

The United States Attorney hereby charges that:

## COUNT ONE

## (WIRE FRAUD)

### Introduction

1.  At all times relevant to this matter, Defendant CELESTE SANTIFER ("SANTIFER" or "defendant") was employed at the YMCA of Metropolitan Washington ("YMCA-DC") as an office manager.  YMCA-DC is a non-profit organization whose mission is to foster the spiritual, mental, and physical development of individuals, families, and communities according to the ideals of inclusiveness, equality, and mutual respect for all.  Every year, YMCA-DC provides opportunities in wellness, aquatics, youth sports, summer camp, childcare, and more for over 250,000 people through 16 branches and program centers, located in the District of Columbia, Maryland, and Virginia.  SANTIFER worked at the YMCA-DC office located at 1112 16th Street, Northwest, Suite 240, Washington, D.C.

2.  Verizon Wireless ("Verizon") is a company that offers voice, data, and video services and solutions on networks and platforms.

3.      YMCA-DC, as a non-profit organization, had an arrangement with Verizon by which YMCA-DC purchased cellular telephones ("cell phones") from Verizon for YMCA-DC employees at a discounted price.

4.      As an office manager, SANTIFER frequently helped YMCA-DC executives with their cell phones and, as a result, started interacting with Verizon on YMCA-DC's behalf.

### The Scheme to Defraud

5.      From at least as early as on or about January 2016, to on or about April 2019, in the District of Columbia and elsewhere, the defendant, CELESTE SANTIFER, devised and intended to devise a scheme to defraud YMCA-DC and Verizon, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as more fully described below.

### The Purpose of the Scheme to Defraud

6.      The purpose of the scheme to defraud was for SANTIFER to unlawfully enrich herself by stealing cell phones that Verizon sold to YMCA-DC at a discounted rate and reselling those phones to third party companies for money.

### The Manner and Means of the Scheme

7.      It was part of the scheme to defraud that, over time, SANTIFER took on increased responsibility handling YMCA-DC's phone purchasing from Verizon.  On December 4, 2017, SANTIFER requested that Verizon grant her the role of "MyPOC," which stands for "My Point of Contact," for YMCA-DC.  SANTIFER followed up with Verizon by e-mail the following day, on December 5, 2017.  Verizon completed the requested changes, resulting in SANTIFER being designated as YMCA-DC's sole MyPOC.

8. It was further part of the scheme that, upon becoming MyPOC, SANTIFER immediately removed three other YMCA-DC employees from access to the organization's accounts with Verizon.

9. It was further part of the scheme that, as the Verizon MyPOC, SANTIFER was able to log in to YMCA-DC's account on the Verizon business web portal and directly order cell phones. SANTIFER ordered over 1,000 phones that were purportedly for YMCA-DC employees but, in actuality, were for her own personal gain. Upon receiving the cell phones that she intended to sell, SANTIFER disconnected them from Verizon service.

10. It was further part of the scheme that SANTIFER sold cell phones that she ordered without authorization to third-party companies that buy and re-sell new or slightly used phones. The loss to Verizon from this scheme was $618,090, which is the value of the phones SANTIFER ordered for personal use under the guise of being for YMCA-DC employees.

11. It was further part of the scheme that SANTIFER took steps to evade detection by other employees of YMCA-DC. Specifically, she created four sub-accounts to the main account YMCA-DC had with Verizon and arranged for the bills to come addressed to her rather than the finance employee who received the main Verizon account bills. SANTIFER also caused Verizon to ship some of the cell phones she fraudulently ordered directly to her personal residence.

12. It was further part of the scheme that SANTIFER took steps to deceive employees of Verizon and the third-party companies to which she sold cell phones. Specifically, SANTIFER falsely told a Verizon employee inquiring about why numerous phones were disconnected shortly after being activated that it was the result of a high number of personnel changes. SANTIFER also told the third-party purchasers that the phones she sold came from extra inventory of phones that YMCA-DC had accumulated, suggesting the sales proceeds would be returned to YMCA-DC.

## COUNT ONE

13. The allegations contained in paragraphs 1 through 12 of this Information are realleged and incorporated as if fully set forth herein.

14. On or about March 29, 2019, in the District of Columbia and elsewhere, SANTIFER, for the purpose of executing and attempting to execute the scheme to defraud described above, caused to be transmitted by means of wire communication in interstate commerce from the District of Columbia certain writings, signals, and sounds, that is, logging in to Verizon's business web portal and placing an order for 90 black Apple iPhone 7 cell phones with 32 gigabytes (GB) of storage, to be used for her personal gain without authority from YMCA-DC.

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

## FORFEITURE ALLEGATION

1. Upon conviction of the offense alleged in Count One of this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).  The United States will also seek a forfeiture money judgment against the defendant in the amount of $618,090.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without

difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

(**Criminal Forfeiture**, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     /s/ *Christine M. Macey*
CHRISTINE M. MACEY
Assistant United States Attorney
D.C. Bar. No. 1010730
Fraud, Public Corruption, and Civil Rights Section
601 D Street, NW, Room 5-1519
Washington, D.C. 20530
(202) 252-7058
Christine.Macey@usdoj.gov